**RICHARD BEST**
**REGIONAL DIRECTOR**
**Lara Shalov Mehraban**
**Judith Weinstock**
**David Stoelting**
**Alison Conn**
**Elizabeth Goody**
**Attorneys for Plaintiff**
**SECURITIES AND EXCHANGE COMMISSION**
**New York Regional Office**
**Brookfield Place**
**200 Vesey Street, Suite 400**
**New York, New York 10281-1022**
**(212) 336-0174 (Stoelting)**
**StoeltingD@sec.gov**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | <u>**COMPLAINT**</u> |
| **Plaintiff,** | **21 Civ. 4577** |
| **-against-** | |
| **BATTERY PRIVATE, INC. and JEFFREY SLOTHOWER,** | **JURY TRIAL DEMANDED** |
| **Defendants.** | |

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against

Battery Private, Inc. ("Battery Private") and Jeffrey Slothower ("Slothower") (collectively,

"Defendants"), alleges as follows:

**SUMMARY**

1.      Slothower, through his entity Battery Private, engaged in two separate fraudulent

schemes. In the first scheme, beginning in 2016 through at least June 2018, Slothower

misappropriated approximately $1.18 million from an advisory client and her then-spouse, a

prospective advisory client.  In the second scheme, beginning in approximately April 2018 through

at least December 2019, Slothower made misrepresentations and omissions in connection with

private sales of a penny stock owned by Battery Private.  Additionally, Slothower exaggerated

Battery Private's Regulatory Assets Under Management on the firm's Form ADV filings in order to

represent that Battery Private was an SEC-registered investment adviser.

## VIOLATIONS

2.      By virtue of the conduct alleged herein, Defendants Battery Private and Slothower

("Defendants") have violated Section 17(a) of the Securities Act of 1933 ("Securities Act") [15

U.S.C. § 77q(a)], Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C.

§§ 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], Sections 206(1), 206(2) and 207 of the

Investment Advisers Act of 1940 (the "Advisers Act") [15 U.S.C. §§ 80b-6(1), 80b-6(2) and 80b-7],

and Battery Private has violated and Slothower has aided and abetted Battery Private's violation of

Section 203A of the Advisers Act [15 U.S.C. § 80b–3a].

3.      Unless Defendants are restrained and enjoined, they will engage in the acts, practices,

transactions, and courses of business set forth in this Complaint or in acts, practices, transactions,

and courses of business of similar type and object.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

4.      The Commission brings this action pursuant to the authority conferred upon it by

Securities Act Sections 20(b) and 20(d) [15 U.S.C. §§ 77t(b) and 77t(d)], Exchange Act Section 21(d)

[15 U.S.C. § 78u(d)], and Advisers Act Sections 209(d) and 209(e) [15 U.S.C. §§ 80b-9(d) and 80b-

9(e)].

5.      The Commission seeks a final judgment: (a) permanently enjoining Defendants from

violating the federal securities laws this Complaint alleges they have violated; (b) ordering

Defendants to disgorge all ill-gotten gains they received as a result of the violations alleged here and

to pay prejudgment interest thereon; (c) ordering Defendants to pay civil money penalties pursuant

to Securities Act Section 20(d) [15 U.S.C. § 77t(d)], Exchange Act Section 21(d)(3) [15 U.S.C.

§ 78u(d)(3)], and Advisers Act Section 209(e) [15 U.S.C. § 80b-9(e)]; (d) permanently prohibiting

Battery Private and Slothower from participating in any offering of a penny stock, pursuant to

Securities Act Section 20(g) [15 U.S.C. § 77t(g)] and Exchange Act Section 21(d)(6) [15 U.S.C.

§ 78u(d)(6)]; and (e) ordering any other and further relief the Court may deem just and proper.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action pursuant to Securities Act Section 22(a)

[15 U.S.C. § 77v(a)], Exchange Act Section 27 [15 U.S.C. § 78aa], and Advisers Act Section 214 [15

U.S.C. § 80b-14].

7.      Defendants, directly and indirectly, have made use of the means or instrumentalities

of interstate commerce or of the mails in connection with the transactions, acts, practices, and

courses of business alleged herein.

8.      Venue lies in this District under Securities Act Section 22(a) [15 U.S.C. § 77v(a)],

Exchange Act Section 27 [15 U.S.C. § 78aa], and Advisers Act Section 214 [15 U.S.C. § 80b-14].

Defendants may be found in, are inhabitants of, or transacted business in the Eastern District of

New York, and certain of the acts, practices, transactions, and courses of business alleged in this

Complaint occurred within this District, including Slothower and Battery Private's solicitation of

investors.

## DEFENDANTS

9.      **Slothower**, age 43, resides in Southampton, NY, and is a licensed real estate broker

in New York.  He received his Series 25 in 2001; Series 7 and 21 in 2002; Series 63 in 2009; and

Series 65 in 2010.  From 2001 to 2010, Slothower worked at a large financial institution as a

specialist and registered representative.  From 2010 to January 2016, Slothower worked at another

large financial institution, Firm A, as a financial adviser and registered representative.  From January

3

to June 2016, he worked as a registered representative at a third financial institution, Firm B. In connection with conduct that occurred at Firms A and B, Slothower, in a Financial Industry Regulatory Authority (FINRA) Letter of Acceptance, Waiver and Consent dated November 9, 2017, without admitting or denying the findings, consented to a 15-day suspension from association with any FINRA member, a $5,000 fine, and the entry of findings that he improperly shared in a customer's loss in violation of FINRA Rules 2150(c) and 2010. In the summer of 2016, Slothower established his own advisory firm, Battery Private. Slothower is not currently registered or associated with a FINRA member firm.

10.     **Battery Private** is a New York corporation which had its principal place of business in New York, NY. Slothower is the sole owner, chief executive officer and chief compliance officer of Battery Private. Battery Private has never had any employees.

## OTHER INDIVIDUALS AND ENTITIES

11.     **Hub Deals Corp.** ("Hub Deals"; ticker HDLS) is a Nevada corporation with offices located in New York, NY and Brooklyn, NY. Hub Deals Corp. was originally incorporated in 2001 as Newark Valley Resources Inc. In 2002, it was renamed American Oil & Gas Inc., and then North American Oil & Gas Inc. It purportedly operated as an oil and gas exploration company, having a subsidiary that owned oil and gas leases. The company became inactive after selling the subsidiary in 2002. In 2013 it was reinstated and the name was changed to Century Gold Ventures Inc. (ticker IUTK), a purported gold mining business. In April 2018, the Company changed its name to Hub Deals Corp. In April 2019, Hub Deals Corp. entered into a reverse merger with Hub Deals Corporation, a Delaware entity purportedly in the luxury online auction business. Hub Deals is currently a reporting company under Section 15(d) of the Exchange Act. Hub Deals has never publicly traded, and at the time of this filing, was delinquent in its SEC reporting.

12.     **Clients A and B** were California residents and were married.  They are now divorced.

13.     **Investor C** is a resident of California.

14.     **Investor D** is a resident of Puerto Rico.

## FACTS

I.     BACKGROUND

A.     Defendants' Misappropriation from Clients A and B

15.     Beginning in 2016 through at least June 2018, Defendants misappropriated approximately $1.18 million from Battery Private advisory client, Client A, and her then-spouse, Client B, a prospective Battery Private client.

16.     From 2013 until Slothower's departure from Firm A in January 2016, Client A was Slothower's advisory client at Firm A.

17.     Thereafter, Slothower convinced Client A to move her account to Battery Private. Slothower told Client A that Battery Private was registered with the SEC.  Battery Private's SEC registration was important to Client A's decision to open an advisory account with Battery Private.

18.     In September 2016, Client A executed Battery Private's Investment Advisory Contract and transferred all the assets in her account, valued at approximately $580,000, to an account advised by Battery Private.  Slothower initially invested Client A's money in stocks.

19.     Client B had also been an advisory client of Slothower at Firm A in 2013.

20.     Client B initially declined to open an account with Battery Private, but Slothower pressed him for money to manage, claiming Client B would get better returns with Slothower and Battery Private.  Slothower proposed an investment in low-risk bonds backed by homeowners association dues, through which investors would be paid dividends or interest.

21.     In January 2017, after several conversations with Slothower about this investment

strategy, Client B transferred approximately $546,727 to Battery Private with the understanding that Slothower would invest the funds.  Prior to this transfer from Client B, the Battery Private bank account had a balance of $3,333.06.

22.     In the communication in which Slothower sent the instructions for Client B to wire his money to the Battery Private bank account, Slothower also solicited Client B to become an advisory client of Battery Private. Slothower wrote, "If and when you want to open an investment account please let me know as I have separate paperwork consisting of an investment advisory contract and an account opening agreement through my custodian."

23.     At the time that he transferred his money to the Battery Private bank account, Client B was a prospective advisory client of the Defendants, and he understood that the Defendants would invest his money in securities.  The Defendants did not invest Client B's funds. Instead, the Defendants spent his money, including on personal items such as restaurants, groceries, and approximately $125,000 for a Mercedes Benz G-Class SUV.

24.     By misappropriating his money, Defendants defrauded Client B.

25.     Slothower made two payments of approximately $11,000 each to Client B in April and August 2017.  The payment was not interest or dividends from investments in any securities.

26.     The money Slothower sent to Client B in April 2017 came primarily from money that Defendants took from Client A's advisory account, purportedly as an advisory fee.  At this time, Defendants took a large advisory fee from Client A's advisory account of approximately 4% of the overall account value, even though Defendants had already been collecting monthly deductions of an approximately 1% per annum advisory fee and her account had been open less than one year.

27.     Slothower continued to press Client B to invest additional funds.  Client B invested an additional approximately $12,000 in September 2017.

28.     In October 2017, Slothower paid Client B approximately $11,000.  The payment was

not interest or dividends from any investments in securities.

29.      Slothower pressed Client B to have Client A move her money that was already under Defendants' management into Defendants' purported low-risk bond strategy.  Client B suggested to his then-wife, Client A, that she change from her current stock investment strategy under the Defendants into the low-risk bonds.

30.      In late 2017, as a client of the Defendants, Client A transferred all of the money from the brokerage account that held the assets of her Battery Private advisory account - approximately $540,000 - to Battery Private's bank account. Prior to this transfer from Client A, the Battery Private bank account had a balance of 89 cents.

31.      Client A was an advisory client of the Defendants at the time she transferred her money and understood that her new investment continued to be held under her advisory relationship with the Defendants.  She believed that her money would be invested in low-risk bonds or a fund comprised of low-risk bonds.

32.      Instead of investing the money, Slothower spent Client A's money, including on personal expenses such as groceries and a golf club membership.

33.      By misappropriating her money, the Defendants breached their fiduciary duty to and defrauded Client A.

34.      In June 2018, Client B invested an additional $84,000 in the Defendants' purported low-risk bonds.  On the same day as Client B's investment, Slothower paid Client A approximately $14,000.  The payment was not interest or dividends from investments in any securities.  Rather, the payment was funded by Client B's investment.

35.      In June 2018, Slothower paid Client B approximately $22,000.  The payment was not interest or dividends from investments in any securities.  Rather, the payment was funded, at least in part, by the investment that Client B made nine days earlier.

36.     Beginning in January 2017 for Client B and approximately June 2018 for Client A, Slothower sent them statements on Battery Private letterhead that listed a "credited balance" reflecting their investment amount with "8% simple" accruing.

37.     Since June 2018, neither Client A nor Client B has received any other payments.

38.     During this period, Slothower was not earning sufficient income to support his lifestyle.  Slothower spent money generated through this fraudulent scheme, including to pay for personal expenses.

39.     Defendants own two purported income properties in Southampton, NY.  One property entered foreclosure proceedings in May 2018, and a judgment of foreclosure and sale was entered in March 2020.  Another property entered foreclosure proceedings in July 2019; the proceeding is ongoing.

**B.     Deceptive Conduct in the Private Sale of Hub Deals Securities**

40.     In approximately 2017 or 2018, Defendants acquired ten million shares of Hub Deals, purportedly by exchanging collectable stamps for shares owned by a private shareholder.  The exchange was facilitated by a purported Hub Deals consultant and co-founder.

41.     Beginning in approximately April 2018 through at least December 2019, Slothower sold at least 599,000 of Battery Private's Hub Deals shares to eight acquaintances, some of whom were former advisory clients. Slothower made material misrepresentations and omissions and knowingly disseminated false or misleading information to investors with intent to defraud in connection with certain of these private sales of Hub Deals stock.

42.     To sell the shares, Slothower made written and oral misrepresentations and omissions to create the impression that Hub Deals had involvement with or could transact business in cryptocurrency, to misrepresent the value of the company's assets, and to guarantee triple returns on the investment.  Specifically, for seven investors, Slothower put a phony name for the company –

"Hub Deals/EquaCoin" – on share purchase agreements that he drafted and required investors to sign. For all investors, the first page of the share purchase agreements included a "disclaimer" highlighting that the agreement involved cryptocurrency. In addition, in emails he drafted to at least four investors, Slothower touted that Hub Deals owned $100 million worth of a cryptocurrency called EquaCoin and that Hub Deals owned 50% of a crypto casino.

43.     In fact, these representations were false. Hub Deals did not own 50% of a crypto casino, the company was not named "Hub Deals/EquaCoin", Hub Deals did not own $100 million dollars' worth of any cryptocurrency, and the share purchases did not involve cryptocurrency. Hub Deals had, in September 2017, issued a press release stating that it owned 100 million EquaCoin (not $100 million dollars' worth of it).

44.     In addition to the misrepresentations and omissions made to this larger group of purchasers, Slothower guaranteed triple returns to at least one investor, Investor C. In text messages, Slothower told Investor C that Hub Deals would shortly start trading through a broker-dealer network "between $1.00 and $3.00." During telephone conversations, Slothower said that Hub Deals would trade at $1.50, so that, by purchasing shares at $0.50 each, Investor C was guaranteed to triple his investment. Investor C told Slothower that he had no cash to spare and that he was risk averse. Slothower promised Investor C that the investment was safe. In reality, the investment was not guaranteed, nor was it safe. Investor C made the investment based on Slothower's guarantees.

45.     In September 2018, Investor C purchased 200,000 shares for $100,000.

46.     At the time Investor C made his investment, Slothower and Battery Private's bank accounts were overdrawn.

47.     To prop up his assertion that Hub Deals would trade for $1.50, Slothower asked Investor D to place bids to purchase Hub Deals shares for $1.50. As Slothower knew, these bids

did not reflect a real market for the shares at $1.50. In spite of this, Slothower took screenshots of

the bids listing on OTC Markets and sent them to at least two investors, including Investor C.

Slothower did not tell the investors that he was involved in placing the bids.

48.     In March 2019, Slothower sent Investor C a screenshot of a $1.50 bid, and wrote,

"$1.50 bid which is nice."  In September 2019, Slothower texted Investor C that another $1.50 bid

had posted and wrote, "that's good news if there is a bid at $1.50 then it would at least open there."

49.     In December 2019, Slothower texted a different investor stating, "if you have anyone

lingering wanting shares last minute let me know.  There is a $1.50 bid currently so it will open at

least there." When that investor wrote that he would let Slothower know if anyone wanted to

purchase at $1.50, Slothower replied, "no I would [sell] to them at 0.50 so they would be up 200% at

opening."

50.     Despite Slothower's attempts to make Hub Deals shares appear as if they were

publicly trading at $1.50, there have never been any public Hub Deals trades.  None of the

purported offers that Slothower engineered to appear on OTC Markets have ever matched with a

sale.

51.     As a result of this conduct, Defendants defrauded at least eight investors out of

approximately $290,000.

**C.     Misrepresentations in Forms ADV**

52.     The SEC regulates investment advisers, primarily under the Advisers Act and the

rules adopted under that statute.  One of the central elements of the regulatory program is the

requirement that a person or firm meeting the definition of "investment adviser" under the Advisers

Act register with the Commission, unless exempt or prohibited from registration.  Generally, only

larger advisers that have $25 million or more of regulatory assets under management (RAUM) or

that provide advice to investment company clients are permitted to register with the SEC.  Smaller

advisers register under state law with state securities authorities.

53.      Form ADV is the form used by investment advisers to register with both the SEC

and state securities authorities.  In the Form ADV, an adviser reports information about the

investment adviser and its business operations.  An adviser's Form ADV is available to the public

via the SEC's website, and parts of the form must be delivered to advisory clients.  The SEC reviews

information in parts of the form to manage its regulatory and examination programs.

54.      Form ADV defines an adviser with RAUM greater than $25 million but less than

$100 million as a "mid-sized advisory firm." *See* Section 203A(a)(1)(A) of the Advisers Act [15

U.S.C. § 80b-3a(a)(1)(A)].

55.       On December 9, 2016 and again on March 27, 2017, Slothower filed, on behalf of

Battery Private, Forms ADV.  The Forms ADV represented that Battery Private held RAUM of $30

million, and that Battery Private was therefore qualified for registration as a "mid-sized advisory

firm" pursuant to Section 203A(a)(1)(A).

56.      Slothower registered Battery Private with the SEC as a mid-sized advisory firm in

spite of the fact that Battery Private did not have assets close to the $25 million RAUM threshold. In

fact, as Slothower knew at the time, Battery Private's RAUM was significantly less than the $25

million required for SEC registration.

57.      On November 2, 2017, Slothower filed an ADV-W withdrawing Battery Private's

registration.

### FIRST CLAIM FOR RELIEF
### Violations of Securities Act Section 17(a)
### (Both Defendants)

58.      The Commission re-alleges and incorporates by reference here the allegations in

paragraphs 1 through 57.

59.      Defendants, directly or indirectly, singly or in concert, in the offer or sale of

securities and by the use of the means or instruments of transportation or communication in

interstate commerce or the mails, knowingly, recklessly, or negligently (1) employed one or more

devices, schemes or artifices to defraud, (2) obtained money or property by means of one or more

untrue statements of a material fact or omissions of a material fact necessary in order to make the

statements made, in light of the circumstances under which they were made, not misleading, and/or

(3) engaged in one or more transactions, practices, or courses of business which operated or would

operate as a fraud or deceit upon the purchaser.  By reason of the foregoing, Defendants, directly or

indirectly, singly or in concert, have violated and, unless enjoined, will again violate Securities Act

Section 17(a) [15 U.S.C. § 77q(a)].

## SECOND CLAIM FOR RELIEF
### Violations of Exchange Act Section 10(b) and Rule 10b-5 Thereunder
### (Both Defendants)

60.     The Commission re-alleges and incorporates by reference here the allegations in

paragraphs 1 through 57.

61.     Defendants, directly or indirectly, singly or in concert, in connection with the

purchase or sale of securities and by the use of means or instrumentalities of interstate commerce, or

the mails, or the facilities of a national securities exchange, knowingly or recklessly have (i) employed

one or more devices, schemes, or artifices to defraud, (ii) made one or more untrue statements of a

material fact or omitted to state one or more material facts necessary in order to make the

statements made, in light of the circumstances under which they were made, not misleading, and/or

(iii) engaged in one or more acts, practices, or courses of business which operated or would operate

as a fraud or deceit upon other persons.

62.     By reason of the foregoing, Defendants, directly or indirectly, singly or in concert,

have violated and, unless enjoined, will again violate Exchange Act Section 10(b) [15 U.S.C. § 78j(b)]

and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## THIRD CLAIM FOR RELIEF
### Violations of Advisers Act Sections 206(1) and (2)
### (Both Defendants)

63.     The Commission re-alleges and incorporates by reference here the allegations in

paragraphs 1 through 57.

64.     At all relevant times, Battery Private and Slothower were investment advisers under

Advisers Act Section 202(11) [15 U.S.C. § 80b-2(11)].

65.     Battery Private and Slothower, by use of the mails or any means or instrumentality

of interstate commerce, directly or indirectly have: (i) knowingly or recklessly employed one or more

devices, schemes, or artifices to defraud any client or prospective client, and/or (ii) knowingly,

recklessly, or negligently engaged in one or more transactions, practices, and courses of business

which operated or would operate as a fraud or deceit upon any client or prospective client.

66.     By reason of the foregoing, Battery Private and Slothower, directly or indirectly,

singly or in concert, have violated and, unless enjoined, will again violate Advisers Act Sections

206(1) and (2) [15 U.S.C. §§ 80b-6(1) and 80b-6(2)].

## FOURTH CLAIM FOR RELIEF
### Violations of Advisers Act Section 207
### (Both Defendants)

67.     The Commission re-alleges and incorporates by reference here the allegations in

paragraphs 1 through 57.

68.     At all relevant times, Battery Private and Slothower, using the mails and the means

and instrumentalities of interstate commerce, directly and indirectly, willfully made untrue

statements of material fact or willfully omitted to state material facts required to be stated in a report

filed with the Commission

69.     Battery Private and Slothower knowingly, intentionally, and/or recklessly made one

or more untrue statements or omitted the material facts required to be stated in such a report. In

13

engaging in such conduct, Battery Private and Slothower acted with scienter, that is, with intent to deceive, manipulate or defraud or with a severe reckless disregard for the truth.

70. By reason of the foregoing, Battery Private and Slothower, directly or indirectly, singly or in concert, have violated and, unless enjoined, will again violate Advisers Act Section 207 [15 U.S.C. § 80b-7].

## FIFTH CLAIM FOR RELIEF
### Violations of Advisers Act Section 203A
### (Battery Private)

71. The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 57.

72. Battery Private registered with the Commission as an investment adviser under Section 203 of the Advisers Act even though it was prohibited from doing so because Battery Private was regulated or required to be regulated in the state in which it has its principal place of business and did not fall within any other exemption from this prohibition.

73. By reason of the foregoing, Battery Private violated, and, unless enjoined, will again violate Advisers Act Section 203A [15 U.S.C. § 80b–3a].

## SIXTH CLAIM FOR RELIEF
### Aiding and Abetting Violations of Advisers Act Section 203A
### (Slothower)

74. The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 57.

75. As alleged above, Battery Private violated Advisers Act Section 203A [15 U.S.C. § 80b–3a].

76. Slothower knowingly or recklessly provided substantial assistance to Battery Private with respect to its violations of Advisers Act Section 203A [15 U.S.C. § 80b–3a] by, among other things, making or causing Battery Private to make the misrepresentations and omissions.

77.     By reason of the foregoing, Slothower aided and abetted Battery Private's violations of Advisers Act Section 203A [15 U.S.C. § 80b–3a], and, unless enjoined, Slothower will again aid and abet these violations.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter a Final Judgment:

## I.

Permanently enjoining Defendants and their agents, servants, employees and attorneys and all persons in active concert or participation with any of them from violating, directly or indirectly, or aiding and abetting violations of Securities Act Section 17(a) [15 U.S.C. § 77q(a)], Exchange Act Section 10(b) [15 U.S.C. §§ 78j(b)], and Rule 10b-5(b) thereunder [17 C.F.R. §§ 240.10b-5(b)]; Advisers Act Sections 203A, 206(1), 206(2)  and 207 [15 U.S.C. §§ 80b-3a, 80b-6(1), 80b-6(2) and  § 80b-7];

## II.

Ordering Defendants to disgorge all ill-gotten gains they received directly or indirectly, with pre-judgment interest thereon, as a result of the alleged violations;

## III.

Ordering Defendants to pay civil monetary penalties under Securities Act Section 20(d) [15 U.S.C. § 77t(d)], Exchange Act Section 21(d)(3) [15 U.S.C. § 78u(d)(3)] and Advisers Act Section 209(e) [15 U.S.C. § 80b-9(e)];

## IV.

Permanently prohibiting Slothower from participating in any offering of a penny stock, including engaging in activities with a broker, dealer, or issuer for purposes of issuing, trading, or

inducing or attempting to induce the purchase or sale of any penny stock, under Exchange Act

Section 21(d)(6) [15 U.S.C. § 78u(d)(6)]; and

## V.

Granting any other and further relief this Court may deem just and proper.


Dated:  New York, New York
        August 13, 2021

RICHARD BEST  Digitally signed by RICHARD BEST
              Date: 2021.08.13 14:22:48 -04'00'

RICHARD R. BEST
REGIONAL DIRECTOR
Lara Shalov Mehraban
Judith Weinstock
David Stoelting
Alison Conn
Elizabeth Goody
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
Brookfield Place
200 Vesey Street, Suite 400
New York, New York 10281-1022
(212) 336-0174 (Stoelting)
StoeltingD@sec.gov

16